## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**LARRY WAYNE JONES**                                                           **PLAINTIFF**
**ADC #070147**

**v.**                              **NO. 5:07CV00038 WRW/BD**

**CORRECTIONAL MEDICAL**
**SERVICES,** *et al.*                                                       **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I**.        **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District

Court Judge William R. Wilson.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from the date you receive the Recommended Disposition.  A copy

will be furnished to the opposing party.   Failure to file timely objections may result in

waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

II.   **Background**:

Plaintiff Larry Wayne Jones, an inmate of the Varner Supermax Unit of the Arkansas Department of Correction ("ADC"), brings this 42 U.S.C. § 1983 action against Correctional Medical Services, Inc. ("CMS") and two CMS employees, Sandra Stratton and Donna Gordon.  Plaintiff seeks monetary damages from Defendants in their official and individual capacities, claiming that they demonstrated deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights.

In his Complaint and Amended Complaint, Plaintiff alleges that he suffers from gastroesophageal reflux disease ("GERD"), hypertension ("HTN"), a vitamin D deficiency, and a foot fungus.  Plaintiff states that he has been prescribed numerous medications to treat these conditions, including Zantac (ranitidine), HCTZ (hydrodivril), multiple vitamins, and clotrimazole anti-fungal cream.  Plaintiff claims that Defendants have acted with deliberate indifference by failing to refill each of his prescriptions in a timely manner.  Plaintiff alleges that he has experienced a delay "from several days to over two months at a time" (docket entry #2).  In addition, Plaintiff claims that Defendants have failed to schedule him for visits in the Chronic Care Clinic every eighty to ninety days.

Pending is Defendants' motion for summary judgment (#40).  In the motion, Defendants argue that they are entitled to judgment as a matter of law because Plaintiff has failed to present any evidence to support his claim for deliberate indifference.

Defendants specifically contend that Plaintiff has not established that any delays in treatment adversely affected him, and his complaints do not amount to deliberate indifference.  Further, Defendants argue that Plaintiff cannot hold CMS liable based upon respondeat superior.  Defendants attach to their motion Plaintiff's medical records and excerpts from Plaintiff's deposition. Plaintiff responded to Defendants' motion (#46). The Court concludes that the motion (#40) should be GRANTED.

## III.   **Discussion**:

    A.   *Standards*

     Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party

will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex,*

477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must

contain specific facts supporting its conclusions."  *Martin v. Sargent*, 780 F.2d 1334,

1337 (8th Cir. 1985).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

federally protected right and show that the alleged deprivation was committed by a person

acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

Prison officials or their agents violate the Eighth Amendment if they commit "acts or

omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious

medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976).   The Eighth

Circuit Court of Appeals has interpreted this standard as including both an objective and a

subjective component:  "The [plaintiff] must demonstrate (1) that [he] suffered [from]

objectively serious medical needs and (2) that the prison officials actually knew of but

deliberately disregarded those needs."  *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th

Cir. 1997).  "The prisoner must show more than negligence, more even than gross

negligence, and mere disagreement with treatment decisions does not rise to the level of a

constitutional violation."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

"Deliberate indifference may include intentionally denying or delaying access to medical

care, or intentionally interfering with treatment or medication that has been prescribed."

*Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (citing *Estelle*, 429 U.S. at 104-05).

When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogation on other grounds recognized by *Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Therefore, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quoting *Hill*, 40 F.3d at 1188); see also *Jackson v. Hallazgo*, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing *Coleman v. Rahija*, 114 F.3d at 778, 784 (8th Cir. 1997)) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *O'Neal v. White*, 221 F.3d 1343 (8th Cir. July 12, 2000) (unpub. per curiam) (citing *Crowley*, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim"). Here, Plaintiff has failed to submit any such evidence.

B.      *Deliberate Indifference Claim*

Here, Plaintiff claims that Defendants have acted with deliberate indifference by failing to refill each of his prescribed medications in a timely manner.  Plaintiff claims that as a result of these delays he has experienced heartburn, esophageal burn, headaches, and pain in his feet.  Based upon the medical records and deposition testimony provided, the Court finds that Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

1.      Gastroesophageal Reflux Disease

According to Plaintiff's allegations and his deposition testimony, he was diagnosed with GERD in 2004.  Plaintiff has been prescribed Zantac (ranitidine) to alleviate the symptoms associated with GERD, including heartburn and pain in the esophagus.  Plaintiff receives Zantac "in person," meaning that he is given a thirty-day supply of Zantac at one time (#46-1 at p.19).  Plaintiff alleges that Defendants continually allow this medication to "run out" and complains that when he is deprived of Zantac, he experiences pain and discomfort.

In his Complaint and Amended Complaint, Plaintiff alleges that because of the delay in receiving his medication, he has experienced erosion of the lining of the esophagus, and scarring and narrowing of the esophagus (#2).  Plaintiff also alleges that the alleged delay in treatment has placed him at a greater risk of developing esophageal cancer (#2).  However, contrary to these allegations, in Plaintiff's deposition, he testified

that he has not been diagnosed with any of these conditions.  Plaintiff states that these are only "potential long-term result[s] of being deprived of medication like that" (#42-2 at p.8).  The only symptoms that Plaintiff claims that he actually suffers when not administered Zantac are heartburn and esophageal burn (#42-2 at p.13).  Although Plaintiff may experience some discomfort when waiting on a prescription refill, he has not placed any verifying medical evidence in the record to establish any "adverse affect on his prognosis." *Crowley*, 109 F.3d at 502.  Further, Plaintiff's medical records indicate that each time Plaintiff requested a Zantac refill, a refill was, in fact, ordered or Plaintiff was scheduled to see either a nurse or doctor for an evaluation (#42-1 at p.10, 11, 13, 14, 16, 20, 25, 26, 27, 32, 34, 35, and 42).[1]  Plaintiff acknowledges that his prescriptions always were ordered when requested in his deposition testimony (#46-1 at p.38).  Accordingly, Plaintiff cannot claim that Defendants acted with deliberate indifference to his medical needs.  See *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors were not deliberately indifferent when they treated inmate treated

---

[1] The Court notes that on one occasion there is no evidence that Plaintiff's Zantac prescription was ordered to be refilled or that Plaintiff was referred to medical personnel. On June 29, 2006, Plaintiff complained of headaches and requested this his Zantac prescription be refilled (#42-1 at p.24).  Plaintiff's medical records do not indicate that Zantac was ordered at that time.  Plaintiff made the same request on July 24, 2006 (#42-1 at p.27).  At that time, Plaintiff was referred to the Chronic Care Clinic to have his "meds reordered" (#42-1 at p.27).  On July 27, 2006, Plaintiff's Zantac was ordered (#42-1 at p.22).  However, Plaintiff has not placed any evidence in the record establishing any detrimental effect to his condition based upon this delay.

on numerous occasions and offered him a variety of pain killers).  Defendants are entitled

to judgment as a matter of law on this claim.

    2.       Hypertension

Plaintiff also alleges that he suffers from hypertension.  In his Complaint and

Amended Complaint, Plaintiff states that missed doses of blood pressure medication have

caused him to have headaches, arteriosclerosis, an abnormally enlarged heart, kidney

damage, and eye damage (#2).  However, in his deposition, Plaintiff admitted that, with

the exception of headaches, he has not suffered from any of these conditions, nor has he

been diagnosed with any of these conditions (#42-2 at p.10-11).  In addition, although

Plaintiff claims to have suffered from headaches as a result of a delay in his blood

pressure medicine, his medical records indicate that he has only complained of headaches

on two occasions.[2]  On November 29, 2004, Plaintiff complained of a headache and was

seen by medical personnel (#42-1 at p.57).  On that date, Plaintiff's blood pressure was

taken and was recorded as "normal."  Plaintiff's medical records indicate that he refused

the pain medication provided at that time.[3]  On June 29, 2006, Plaintiff again complained

---

    [2] The Court notes that on August 8, 2005, Plaintiff requested that all of his
medications be refilled.  In that request, Plaintiff stated that he had been without his
medications "for a long time and has suffered because of it"(#42-1 at p.42).  However,
Plaintiff did not specifically complain of a headache at that time.

    [3] In Plaintiff's deposition, he states that he has never refused medication (#46-1 at
p.43-44).  Despite the conflicting evidence on this issue, the medical records show that
Defendants responded to each of Plaintiff's medical needs in a timely fashion.
Accordingly, such a dispute does not create a material dispute of fact precluding
judgment as a matter of law.

of headaches (#42-1 at p.24).  Plaintiff again was seen immediately by medical personnel

and was provided medication for his symptoms.  Plaintiff also was advised to apply

pressure to help alleviate the headaches.  On that date, although Plaintiff requested a refill

for Zantac and clotrimazole, Plaintiff did not request a refill of any medication related to

hypertension.  Further, Plaintiff's medical records do not indicate that these headaches

were related in any way to hypertension.  Accordingly, Plaintiff cannot show any

detrimental effect of any alleged delay in medical treatment.  Defendants are entitled to

judgment as a matter of law on this claim.

       3.     Vitamin D Deficiency

      Plaintiff also alleges and testified in his deposition that he must take multivitamins

because he suffers from a vitamin D deficiency.  Plaintiff alleges that this deficiency

exists because Plaintiff has eliminated milk, eggs, and meat from his diet (#42-2 at p.10-

11).  He claims that if he does not take a multivitamin, the vitamin D deficiency can lead

to bone loss and tooth decay (#2).  However, Plaintiff admits in his deposition that he has

not suffered from any bone loss at this time (#42-2 at p.10-11).  In addition, Plaintiff

states that he has had only one cavity during his incarceration and he is not aware of

whether that cavity was related to any vitamin D deficiency (#42-2 at p.11).

      Plaintiff's medical records also indicate that each time Plaintiff requested that his

multivitamins be refilled, either multivitamins were ordered for him or he was scheduled

for an examination by medical personnel (#42-1 at p.10, 13, 14, 34, 35, 40, 42, 45, 49, 52,

and 56).  Further, Plaintiff's medical records show that on June 13, 2007, Plaintiff was

seen by Dr. Patrick Arnold who noted that there was no "clinical need" for Plaintiff to

take vitamins (#42-1 at p.4).  Although Plaintiff claims that when he does not take his

multivitamin, he "feels week,"(#46-1 at p.34), Plaintiff has failed to produce any evidence

to show that he has experienced any detrimental effect of any alleged delay of treatment

of this condition.  Accordingly, Defendants are entitled to judgment as a matter of law on

this claim.

        4.      Foot Fungus

        In 2004, Plaintiff was diagnosed with "tinea pedis" commonly known as athlete's

foot (#42-1 at p.69).[4]  Plaintiff has been prescribed a variety of creams to help alleviate

the symptoms associated with this condition.  Plaintiff states that Defendants routinely

have deprived him of this medication by allowing his prescriptions to expire.  He

complains that these lapses have caused him pain and discomfort.

        The Court is hesitant to say that Plaintiff's athlete's foot or foot fungus constitutes

a serious medical condition under § 1983.  A serious medical need is "one that has been

diagnosed by a physician as requiring treatment, or one that is so obvious that even a

layperson would easily recognize the necessity for a doctor's attention."  *Coleman v.*

---

        [4]  Plaintiff states that he has a foot fungus and that he has never been told that he
has athlete's foot (#46-1 at p.25).

10

*Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Even assuming that Plaintiff's athlete's foot constitutes a "serious medical condition," Plaintiff's medical records do not support any alleged lack of treatment. Plaintiff's medical records indicate that each time Plaintiff requested a refill of clotrimazole, lotrimin, or moisture cream, the medication either was ordered in a timely manner or Plaintiff was scheduled to be seen by medical personnel  (#42-1 at p.13, 14, 15, 25, 26, 28, 29, 34, 35, 40, 46, 47, and 54).[5]  Although Plaintiff may have experienced discomfort when waiting for his prescription to be refilled, Plaintiff has not placed any verifying medical evidence in the record to establish any "adverse affect on his prognosis."  *Crowley*, 109 F.3d at 502.  Based upon this undisputed evidence, Plaintiff cannot claim that Defendants acted with deliberate indifference to this medical condition.

5.      Chronic Care Clinic Visits

Plaintiff also alleges that he was not scheduled to visit the Chronic Care Clinic every eighty to ninety days as was scheduled.  Plaintiff's medical records indicate that he was seen by medical personnel over thirty times between February 6, 2004, and April 13, 2007 (#42-1 at p.1, 5, 8, 12, 17, 21, 22, 23, 29, 33, 36, 37, 38, 41, 43, 46, 48, 50, 53, 54,

---

[5]  On June 29, 2006, Plaintiff complained of headaches and requested this his clotrimazole be refilled (#42-1 at p.24).   Plaintiff's medical records do not indicate whether clotrimazole was ordered at that time.  However, Plaintiff made the same request on May 15, 2006, and the cream was ordered on May 18, 2006. (#42-1 at p.26).  On July 27, 2006, Plaintiff's chlotrimazole cream again was ordered (#42-1 at p.22).

55, 58, 59, 62, 63, 65, 66, 67, 69, 70, and 71).  Further, in Plaintiff's deposition, he

specifically testified that he could not state whether he developed any condition or that

any conditions worsened as a result of a delay in a visit to the Chronic Care Clinic (#42-2

at p.40).  Plaintiff has failed to present any verifying medical evidence to support this

claim.  Accordingly, based upon the undisputed evidence in this matter, Plaintiff has filed

to show that Defendants acted with deliberate indifference by failing to see him every

eighty to ninety days.  Rather, the medical records show that Plaintiff was routinely

treated for each of his medical needs.  Defendants are entitled to judgment as a matter of

law on this claim.

C.      *Respondeat Superior*

Separate Defendant CMS is entitled to judgment as a matter of law because

Plaintiff cannot hold CMS liable based upon a respondeat superior theory of liability.  In

his deposition, Plaintiff stated that he was suing CMS based upon the actions or inactions

of its employees (#42-2 at p.43).  In a § 1983 action, a corporation, acting under color of

state law, can be held liable only for unconstitutional policies or practices, not for the

individual actions of its employees under a theory of respondeat superior.  See *Burke v.*

*North Dakota Dept. of Corr. & Rehab*., 294 F.3d 1043, 1044 (8th Cir. 2002).  Here,

Plaintiff fails to provide any evidence that CMS directly participated in a constitutional

violation, learned of an alleged constitutional violation and failed to act, created a policy

or custom allowing or encouraging illegal acts, or managed its employees in a way that

was would subject it to liability.  Accordingly, CMS is entitled to judgment as a matter of law on Plaintiff's claims.[6]

**IV.   Conclusion:**

The Court hereby recommends that Defendants' motion for summary judgment (#40) be GRANTED and that Plaintiff's claims be DISMISSED with prejudice.

DATED this 29th day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] In their motion for summary judgment, Defendants argue that Plaintiff may not hold Defendant Stratton liable based solely upon her position as Health Services Administrator.  This is correct statement of the law, but in his deposition, Plaintiff stated that he named Ms. Stratton as a Defendant because she failed to take action after Plaintiff contacted her about his medical problems (#46-1 at p.41).  Thus, the Plaintiff is not attempting to hold Ms. Stratton liable based upon a respondeat superior theory. Defendants make the same argument as to Defendant Gordon.  In Plaintiff's deposition, he stated that he had sued Donna Gordon as a Defendant not only because of her responses to his grievances, but also because she failed to "straighten out the problem" (#46-1 at p.43).  In addition, he stated that Defendant Gordon failed to refill his medication in a timely fashion on one occasion (#42-1 at p.41-42).  Accordingly, the Court finds that Plaintiff is not attempting to hold either of these Defendants on a theory of respondeat superior.

13